IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

APRIL FLETCHER,

    Plaintiff,

vs.                                             No. CIV 99-65 MV/RLP

BRUCE BABBITT, Secretary,
U.S. Department of Interior

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment, filed November 29, 1999 **[Doc. No. 19]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED**, as explained below.

## BACKGROUND

The Court finds the following material facts to be undisputed:[1] Plaintiff April Fletcher asserts wage discrimination based on gender in violation of the Equal Pay Act and Title VII of the Civil Rights Act of 1964, by her employer, the Fish and Wildlife Service ("FWS"), Region 2, Albuquerque, New Mexico. Plaintiff is currently employed as a Natural Resource Specialist, GS-486-12 for the Fish and Wild Service (FWS), Region 2, Albuquerque, New Mexico. Prior to 1994, Plaintiff was employed as a Wildlife Biologist for the FWS, Region 2, Albuquerque, New

---

[1] The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Mere assertions that a fact is or is not controverted are insufficient. *Id.*

Mexico. In June, 1993, Region 2 received a copy of Order No. 59 ("Order") issued by the Director of FWS. The Order stated that effective October 1, 1993, a new branch would be established in the Division of Engineering for the purpose of overseeing the FWS' compliance with pollution control standards. Pursuant to the Order, Region 2 initiated a Request for Personnel Action to hire an Environmental Engineer.[2] The new environmental engineering position was classified at Grade 13. On October 2, 1994, Bernard Freeman was assigned to the environmental engineering position. Prior to his assignment, Mr. Freeman worked as a G-13 Program Supervisor/Engineer for the Officer of Surface Mining. Prior to 1994, while employed as a wildlife biologist, Plaintiff devoted 80 percent of her time to matter related to contamination cleanup, including the removal of underground storage tanks. Her other duties included:

    (a)    ensuring compliance with federal and state regulations;

    (b)    identification and solution of individual pollution problems;

    (c)    preparing budgets and contracts specifications related to regulatory contaminants compliance;

    (d)    preparing contracts related to hazardous waste disposal, asbestos disposal, and solid waste disposal; and

    (e)    maintenance system projects related to non-compliance problems.

---

[2] FWS alleges that it was obligated to initiate the Request for Personnel Action under the Order. Plaintiff disputes that Order 59 applied to the regional divisions and contends that Region 2 elected on its own volition to initiate the hiring procedure. This issue is not material for deciding the present motion. The material fact is that Region 2 initiated the hiring procedure seeking an engineer to operate under the new branch in the Division of Engineering.

In October 1994, all of Plaintiff's cleanup duties were transferred to Bernard Freeman.[3] Plaintiff's position was abolished and Plaintiff transferred to a new position. Although Mr. Freeman assumed Plaintiff's contamination cleanup duties, these duties represented only a part of all the duties actually performed by him in 1994 and the subsequent years. Between October 1994 and October 1995, Mr. Freeman spent approximately 20 percent of his time on contamination cleanup. After his first year of his employment, he spent approximately 5-10 percent of his time on contamination cleanup related to underground storage tank contamination. The majority of his remaining time was devoted to the following duties:

    (a)    auditing facilities to determine compliance with federal and state environmental statutes;

    (b)    reviewing construction project designs, preparing cost estimates, contract specifications, bid packages for projects. These projects were related to radon mitigation, design of drinking water and water waste systems, hazardous waste disposal, asbestos removal and solid waste removal;[4]

    (c)    inspecting facilities for potential lead paint problems;

---

[3] There is a dispute as to whether Plaintiff was aware in October 1994 that all her cleanup duties were being transferred to Mr. Freeman. However, the Court does not find this dispute to be material for the purpose of resolving the present motions.

[4] Plaintiff disputes that Mr. Freeman is actively involved in radon mitigation. Although she does not dispute that Mr. Freeman is involved in the management of waste water systems, she contends that this work is typically done by GS-11 or GS-12 engineers. She also alleges that lead paint inspection, seismic inspection and flood damage projects are not in Mr. Freeman's job description and are duties typically assigned to Safety Officers. Nonetheless, she does not dispute that Mr. Freeman is involved in these duties.

(d) conducting seismic activity building inspections; recommending and overseeing remedial measures;[5]

(e) serving as program manager for flood damage projects in Region 2;[6]

(f) serving as program manager for fish hatchery construction projects in Region 2; and

(g) working on refuge cleanup projects identified through the environmental audit process.

Mr. Freeman receives a higher salary in his GS-13 position than Plaintiff did in her GS-12 position. The initial job description for Mr. Freeman's position consisted of many duties performed by Plaintiff in her GS-12 position. The actual job duties performed by Mr. Freeman require an engineering degree or engineering experience. Plaintiff does not have an engineering degree and is not qualified to perform many of the duties actually performed by Mr. Freeman. The main differences between Mr. Freeman's and Plaintiff's jobs include:

(a) *Drinking Water Systems*. Mr. Freeman is involved in the design of drinking water and water waste systems. Plaintiff had no such duties.

(b) *Lead Paint*: Mr. Freeman conducts lead paint inspection and removal. Plaintiff had no such duties.

(c) *Seismic Evaluation:* Mr. Freeman evaluates seismic problems and implements solutions based on engineering principles. Plaintiff had no such duties.

---

[5] Plaintiff disputes that this duty was in Mr. Freeman's job description, but does not dispute that he actually performed this duty.

[6] Plaintiff disputes that this duty was in Mr. Freeman's job description, but does not dispute that he actually performed this duty.

(d) *Flood Damage Projects and Fish Hatchery Construction Projects:* Mr. Freeman is the project manager for such engineering projects. Plaintiff had no such duties.

In January 1998, Plaintiff sought EEO counseling for wage discrimination. She commenced the present action on January 19, 1999.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United*

*States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

Plaintiff claims wage discrimination based on gender in violation of the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act of 1964. She argues that the job description for the environmental engineering position filled by Mr. Freeman consisted of substantially the same duties that she performed in her GS-12 wildlife biologist position. She further contends that her job duties were upgraded to a GS-13 job classification, and accordingly she should receive compensation for the duties she performed at a lower GS-12 salary. She does not dispute that the actual duties performed by Mr. Freeman surpass her job duties and her job qualifications. Defendant argues that Plaintiff cannot maintain a claim wage discrimination either under the EPA or Title VII. Specifically, Defendant maintains that notwithstanding the initial job description, Mr. Freeman's actual duties consist of many other components aside from Plaintiff's former contamination cleanup duties. As such, Defendant asserts that Mr. Freeman's job is not substantially similar to Plaintiff's prior job in terms of scope, nature of responsibility, and knowledge required. Defendant further contends that Plaintiff cannot rebut Defendant's legitimate business justification for hiring an engineer at a higher salary in the GS-13 position.[7]

---

[7] Defendant also spends much time arguing that Plaintiff did not file an EEO action in a timely manner as required under 29 C.F.R. § 1614.105(a)(1). The Court need not address

### I. Equal Pay Act Claim

The Equal Pay Act provides, in relevant part:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1). As the Supreme Court summarized,

> Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry--the fact that the wage structure of 'many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.' The solution adopted was quite simple in principle: to require that 'equal work will be rewarded by equal wages.'

*Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (citation omitted).

"The Act's basic structure and operation are similarly straightforward." *Id.* To establish a *prima facie* case under the EPA, the plaintiff has the burden of proving that

> (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances.

*Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993) (citations omitted). Under the EPA, the term "equal work" is construed narrowly, and a failure to furnish equal pay for "comparable work" or "like jobs" is not actionable. *Id.*

> If a prima facie case is so established under the EPA the defendant must undertake the burden of persuading the jury that there existed reasons for the wage disparity

---

this argument since it finds that Plaintiff cannot maintain a claim based on the merits.

>which are described in the Equal Pay Act. These reasons are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; (4) a disparity based on any factor other than sex.

*Id.* Unlike an action pursuant to Title VII, the plaintiff charging a violation of the Equal Pay Act does not have to prove discriminatory intent. *See Sinclair v. Automobile Club of Oklahoma*, 733 F.2d 726, 729 (10th Cir. 1984). On the contrary, the Equal Pay Act creates a form of strict liability where the employer cannot explain the pay differential based on one of the grounds enumerated in the statute. *Id*. Further, courts have held that "a disparity based on any factor other than sex" does not mean literally *any* other factor but encompasses only those reasons which have a legitimate business purpose. *See E.E.O.C. v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988).

In the present case, Defendant argues that Plaintiff cannot establish a *prima facie* case under the EPA. Defendant contends that Mr. Freeman's job duties consisted of many duties aside from Plaintiff's contamination cleanup duties, and that the contamination cleanup duties comprised only between 5-20 percent of Mr. Freeman's actual job functions. Plaintiff does not dispute that Mr. Freeman's actual duties consisted of more functions aside from her contamination cleanup duties. She also does not dispute that the additional job duties performed by Mr. Freeman were in the field of engineering which she was not qualified to perform. Rather, she contends that the job description for the position filled by Mr. Freeman was substantially equal to the job duties she performed prior to 1994. Accordingly she argues that her job duties were consistent with the job description for the higher paid GS-13 position. She asserts that her job prior to 1994 should be compared with the job description for the GS-13 position filled by Mr.

Freeman, rather than to his actual job duties as they are now performed. His actual job duties, she maintains, are irrelevant.

Plaintiff's arguments are misplaced. Under the EPA, the relevant inquiry is the actual job duties performed, not the job description. Although job titles or descriptions are factors to consider in determining whether a violation of the EPA has occurred, they are not determinative. "Substantial equality is not a factor of job titles or classification, but rather of actual requirements or performance of the job." *Thompson v. City of Albuquerque*, 950 F. Supp. 1098, 1103 (D.N.M. 1996). *See also Mulhall v. Advance Sec. Inc.*, 19 F.3d 586, 592 (11th Cir. 1994); *Soto v. Adams Elevator Equip. Co.*, 941 F.2d 543, 548 (7th Cir. 1991) (actual duties, not job titles, are relevant); *Epstein v. Secretary of Treasury*, 739 F.2d 274, 278 (7th Cir. 1984) (summary judgment against plaintiff was proper where the only evidence of "equal work" was in job description); *EEOC v. Grinnell Corp.*, 881 F. Supp. 406, 410 (S.D. Ind. 1995) (in assessing whether jobs are equal, the court must look to the duties actually performed by each employee, and not to his or her job description); *Woodward v. Heritage Imports*, 773 F. Supp 306 (D. Utah 1991); *Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531, 1550 (S.D.N.Y. 1986) (determination of whether two jobs are substantially equal for the purpose of the EPA, must be based on actual job content and not on job titles or descriptions).

In determining whether the employees being compared have jobs of substantial equality, the court must make a practical judgment on the basis of a particular case. *See Thompson v. City of Albuquerque*, 950 F. Supp at 1103. In order to survive summary judgment, Plaintiff must produce evidence creating a genuine issue of material fact showing that she performed work substantially equal in duties, skill, effort, and responsibility to the work performed by her

comparator.  *See Sprague v. Thorn Americas*, 129 F.3d at 1365; *Houck v. Virginia Polytechnic Institute*, 10 F.3d 204, 205 (4th Cir. 1993). "'Skill' includes such considerations as experience, training and abilities." *EEOC v. Central Kansas Medical Center*, 705 F.2d 1270, 1272 (10th Cir. 1983) (rejected on other grounds, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)); *Thompson v. City of Albuquerque*, 950 F. Supp at 1103.  "'Effort' refers to the physical or mental exertion necessary to the performance of a job." *Id.*  "'Responsibility' concerns the degree of accountability required in performing a job" *Id.*  The plaintiff need not prove that her job and that of the comparator are identical.  *See Mulhall v. Advance Sec. Inc.*, 19 F.3d at 592.  Rather, the crucial issue in an EPA claim is whether the jobs to be compared have a common core of tasks, i.e., whether significant portions of the jobs are substantially equal.  *See EEOC v. Grinell Corp.*, 881 F. Supp. at 410; *Brobst v. Columbus Services Intern*, 761 F.2d 148, 156 (D. N.J. 1996).

     A comparison of the actual duties performed by Plaintiff in her wildlife biologist position prior to 1994 and by Mr. Freeman as an environmental engineer fails to demonstrate substantial equality in duties.  The actual duties performed by Plaintiff and Mr. Freeman are equal mainly with respect to the contamination cleanup performed by Mr. Freeman.  However, the evidence establishes that such cleanup duties consisted of only 5-20 percent of Mr. Freeman's work.  There is also some overlap in their respective duties pertaining to maintenance systems.  Overall, however, Mr. Freeman spent roughly 50 percent of his time on projects unrelated to the work Plaintiff was performing in her own job prior to 1994.  These projects included management of water systems, lead paint removal, seismic evaluation, flood damage projects and fish hatchery construction projects.  The varying nature of the duties assigned to Plaintiff and Mr. Freeman preclude a finding of substantial equality between the jobs of each.

In addition, the jobs of Plaintiff and Mr. Freeman required different levels of skill. Plaintiff's job duties did not include work which required engineering experience. In contrast, Mr. Freeman performs many duties requiring engineering experience, including the management of fish hatchery projects, seismic activity projects, flood damage projects, drinking and waste water system projects. Plaintiff admits that many of these engineering projects were beyond her expertise and that she did not deal with engineering construction contracts. Plaintiff has pointed to some duties which require similar skills between her prior job and Mr. Freeman's current job. For instance, she monitored compliance with environmental statutes, interpreted environmental regulations, developed long-term compliance plans, served as a technical advisor to the refuges and conducted audits and surveys, and coordinated programs with other FWS offices. However, these similarities are not sufficient to demonstrate that her job required substantially equal skill to that of Mr. Freeman's environmental engineer job. Plaintiff's position did not require knowledge of engineering principles, as does Mr. Freeman. A substantial part of Mr. Freeman's job consists of engineering construction projects, which utilized skills not required in Plaintiff's job. Accordingly, Plaintiff has failed to meet her burden proving that her prior job involved substantially equal skills as the work done by Mr. Freeman.

Plaintiff has also not demonstrated that her prior job involved the same effort as that of Mr. Freeman's position. The evidence demonstrates that Mr. Freeman has taken on Plaintiff's duties and performs other significant duties as well. The evidence demonstrates that 80 percent of the duties performed by Plaintiff involved contamination cleanup. In contrast, only between 5-20 percent of the work performed by Mr. Freeman involved contamination cleanup. Currently 50 percent of the work performed by Mr. Freeman is unrelated to the work previously performed by

Plaintiff. Plaintiff does not dispute that Mr. Freeman is actually performing these duties in addition to the duties he took over from her. She does argue that Region 2 was in compliance due to her efforts, and as such, their was little contamination cleanup left for Mr. Freeman to do. This may be the case, however, effort cannot only be measured in volume of work. Rather, effort refers to the "physical or mental exertion necessary to the performance of a job." *Thompson v. City of Albuquerque*, 950 F. Supp at 1103. Plaintiff does not offer evidence that she performed the broad array of engineering management duties performed by Mr. Freeman. Rather, she argues that other employees traditionally performed the duties currently being performed by Mr. Freeman. For example, she states that waste water systems were typically developed with the assistance of a G-11 or G-12 engineer. Furthermore, she states that lead paint inspections were typically done by safety officers. It irrelevant who did the work currently performed by Mr. Freeman prior to his employment. What is relevant is whether Plaintiff performed the work currently performed by Mr. Freeman and whether her job required substantially equal effort. Plaintiff has not proven this. She admits that she did not deal with waste water systems, lead paint inspections, or engineering construction contracts. The main areas in which her prior job overlaps with Mr. Freeman's jobs is in the areas of waste contamination cleanup, regulatory compliance, and certain budget proposals. However, she has not offered any facts to suggest that she also performed the other work that Mr. Freeman performs, including management of waste construction projects, seismic analysis, flood damage projects, management of fish hatchery construction, and management of refuge cleanup projects. This evidence is undisputed and indicates that Plaintiff's position and Mr. Freeman's position involve different levels of effort.

Accordingly, Plaintiff has failed to meet her burden of proving that the two jobs involve substantially similar levels of effort.

Plaintiff has likewise failed in proving substantial equality in responsibility between her job and Mr. Freeman's. Although, like Mr. Freeman, Plaintiff was involved in budget planning and extensive contamination cleanup and compliance, she did not have the same management responsibilities currently assumed by Mr. Freeman. Plaintiff did not oversee construction projects or modification of waste and water systems. Plaintiff did not manage fish hatchery or flood control projects. This evidence indicates that Plaintiff did not assume substantial equal managerial responsibilities in her job as compared with Mr. Freeman's job.

A comparison of Plaintiff's pre-1994 job and Mr. Freeman's post-1994 job reveals work which shares certain similarities and embodies certain differences. These differences, included Mr. Freeman's use of engineering skills in the management of construction projects and the management of fish hatcheries and flood projects. In contrast, Plaintiff's work focused mainly on contamination compliance and did not include management of engineering construction projects, seismic inspections, or management of waste water systems. These differences are fatal to Plaintiff's EPA claim. She has failed to create a genuine issue of material fact pertaining to whether her job was substantially equal to Mr. Freeman's position as an environmental engineer. Accordingly, the Court will grant summary in favor of Defendant on Plaintiff's EPA claim.

## II.     Title VII Claim

Plaintiff also alleges that the wage disparity between herself and Mr. Freeman constitutes gender discrimination in violation of Title VII of the Civil Rights Act of 1964. Title VII prohibits intentional discrimination in employment on the basis of gender in both public and private

employment.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 409 (10th Cir. 1993).  Under Title VII, as with the Equal Pay Act, the plaintiff has the burden of demonstrating a *prima facie* case.  *See McDonnell Douglas*, 411 U.S. at 802; *Tidwell v. Fort Howard Corp.*, 989 F.2d at 409.  In order to demonstrate a *prima facie* case of wage discrimination under Title VII, a plaintiff must show that the job she occupied was similar to higher paying jobs occupied by males.  *See Thompson v. City of Albuquerque.*, 950 F. Supp. at 1104; *Baumgardner v. Roa General*, 864 F. Supp 1107, 1111 (D. Utah 1994).  Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the disparate treatment.  *See McDonnell Douglas*, 411 U.S. at 802; *Tidwell v. Fort Howard Corp.*, 989 F.2d at 409.  This burden is "exceedingly light;" the defendant must merely proffer non-gender based reasons, not prove them.  *See Sprague v. Thorn Americas*, 129 F.3d at 1363.  The burden then shifts back to the plaintiff to demonstrate that the proffered reasons are pretextual.  *See McDonnell Douglas*, 411 U.S. at 802; *Tidwell v. Fort Howard Corp.*, 989 F.2d at 409.  The Plaintiff always carries the ultimate burden of persuading the fact finder that the defendant intentionally discriminated against him or her.  *See McDonnell Douglas*, 411 U.S. at 802; *Tidwell v. Fort Howard Corp.*, 989 F.2d at 409.

In the present case, Plaintiff has failed to present genuine issues of material fact to support a *prima facie* case.  Although there are certain similarities between Plaintiff's and Mr. Freeman's jobs, there are also vast differences, most importantly the management of engineering construction projects.  Plaintiff admits that she was not involved in such projects and was not qualified to do engineering work.  By virtue of these engineering projects Mr. Freeman has a different level of responsibility and must use different skills than Plaintiff's job required.  Finally,

14

the broader array of duties assumed by Mr. Freeman as compared to Plaintiff also indicates the differences between the two jobs. Although the burden of proving similarity of jobs is lighter under Title VII than under the EPA, Plaintiff has failed to meet this burden, even when construing the evidence in a light most favorable to her.

Even if Plaintiff had proven a *prima facie* case of wage discrimination under Title VII, FWS has offered a legitimate non-discriminatory reason for the pay disparity. *See Sprague v. Thorn Americas*, 129 F.3d 1355. FWS has demonstrated that they sought a qualified engineer to perform engineering construction projects. These duties are performed by Mr. Freeman and are duties which Plaintiff did not perform and is not qualified to perform. This engineering background, knowledge and education could certainly justify the wage disparity between Plaintiff's and Mr. Freeman's jobs.

When presented with a legitimate non-discriminatory reason, a plaintiff must offer evidence to prove that the proffered reason is a pretext for unlawful discrimination. *Id.* Plaintiff has not offered any persuasive evidence to rebut this legitimate, non-discriminatory justification. She contends that an engineering degree is not required for Mr. Freeman's position, and that the only reason the requirement was included in the job description was because of gender-based animus against her. The essence of her argument is that the engineering degree was required so that Plaintiff could not apply for the job and could not receive a GS-13 salary. There is simply no evidence to prove this contention. First, it is clear that Mr. Freeman is performing engineering duties for which an engineering degree is required. This undermines Plaintiff's contention that the engineering degree requirement was included simply as a pretext. Second, if Plaintiff is contending that the engineering degree operated as a gender-based bar against her applying for

15

the environmental engineering position, then it would be more appropriate for her to bring a claim of hiring discrimination, rather than a wage discrimination claim. Plaintiff's only other evidence of gender-based animus is that a supervisor told her to "butt out" when she was inquiring about the environmental engineering job opening eventually filled by Mr. Freeman. Even construing this evidence in the light most favorable to Plaintiff, this is simply insufficient to make a showing of pretext. The supervisor's statement that Plaintiff should "butt out" does not undermine FWS's proffered reason for hiring an engineer at a higher salary than Plaintiff. Plaintiff has simply failed to raise a genuine issue of material fact that FWS's interest in seeking an engineer was merely a pretext for gender discrimination.

The Court finds that Plaintiff has failed to create a genuine issue of material fact to support her claim that her job was similar to Mr. Freeman's. The different engineering construction projects performed by Mr. Freeman preclude a finding of similarity between the two jobs. Plaintiff has also failed to make a showing that the higher salary offered for the environmental engineering position was merely a pretext for wage discrimination. Accordingly, summary judgment is granted in favor of Defendant on Plaintiff's claim of wage discrimination in violation of Title VII.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **[Doc. No. 19]** is **GRANTED**.

**DATED** this 31th day of March, 2000.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE